**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:09-CR-72** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **CHANCE D. BONNER,** | : | |
| | : | |
| **Petitioner** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is the *pro se* motion (Doc. 527) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255,[1] filed August 5, 2013 by Chance D. Bonner ("Bonner"). In June of 2010, a jury sitting in Harrisburg, Pennsylvania, convicted Bonner of numerous federal offenses, including three instances of Hobbs Act robbery under 18 U.S.C. § 1951, two instances of carjacking in violation of 18 U.S.C. § 2119, conspiracy against the United States, and various firearms charges. The court sentenced Bonner to 976 months imprisonment, the minimum sentence recommended by the Sentencing Guidelines after accounting for various statutory mandatory minimum sentences. Bonner seeks *vacatur* of each of these nine (9) convictions. For the reasons that follow, the court will deny Bonner's motion.[2]

---

[1] <u>See</u> 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

[2] Also before the court are Bonner's motions to amend his petition (Doc. 532) and for leave to file an amendment to his sur reply brief (Doc. 547), which the court will consider in connection with his initial petition.

## I.   **Factual Background**[3]

The events underlying Bonner's convictions date back to the spring of 2008, when a multi-jurisdictional law enforcement team began investigating a string of armed robberies and carjackings that occurred in south-central Pennsylvania. On March 22, 2008, Bonner met codefendant Miqual Hodge ("Hodge") outside of the home Bonner shared with his girlfriend, Jennifer Bass ("Bass"), and their children in Carlisle, Pennsylvania. See United States v. Bonner, 469 F. App'x 119, 122 (3d Cir. 2012). Bonner invited Hodge for a ride in Bass's minivan and, following "some aimless driving and drug use," the trio drove to Harrisburg, Pennsylvania. Id. During their trip, Bonner purchased a stolen handgun from Hodge. See id. In Harrisburg, the group picked up friend and codefendant Donald Scott ("Scott"), who carried a handgun and ski mask. Id. On the return trip to Carlisle, Bonner and Scott decided to rob an individual known to them as "Mikail," believed to be a drug dealer. Id.

The group drove to what they thought to be Mikail's home in Carlisle, but mistakenly approached the home of Eric Clarke ("Clarke") and his family instead. See id. As Clarke walked toward his mailbox, both Bonner and Scott drew their weapons and demanded drugs and money from him. Id. Clarke replied that he had neither, at which point "Bonner thrust his gun under Clarke's nose and told him to

_____

[3] This section is based on the testimonial and documentary evidence introduced at Bonner's trial, held on June 7 to June 11, 2010, as summarized by the Third Circuit Court of Appeals on direct review of Bonner's convictions. It includes only those facts relevant to the court's analysis. The court notes relevantly that Bonner does not dispute the Circuit's factual synopsis, or any facts of record, in his motion.

sniff the gunpowder left from an earlier (fictitious) shooting." Id. Clarke reiterated

that he had no drugs or money. Id. Bonner and Clarke responded by threatening

the life of Clarke's child. Id. At that moment, a vehicle approached on the street,

and Clarke ran to the car and called the police. Id. Bonner and Scott retreated to

Bonner's vehicle, where Hodge and Bass were waiting. Id.

Bonner then suggested that the group visit Quinton Stackfield ("Stackfield")

to collect a $400 debt owed to his brother, and the group set out for the apartment

Stackfield shared with his pregnant fiancée, Renee Barnes ("Barnes"). See id. at

123. Stackfield and Barnes were not home when the group arrived, so they parked

near the couple's apartment and waited for their return. See id. When the couple

returned, Bonner and Scott approached them, "forced [them] into the apartment,

tied Stackfield's arms and legs, and demanded money and drugs." Id. Like Clarke,

Stackfield insisted that he was not a drug dealer. Id. He admitted to personal use

of marijuana, and Bonner and Scott took approximately one gram of marijuana

from the couple's home. Id. Bonner and Scott forced Stackfield to call any person

who might have drugs, and Stackfield telephoned Warren Bennett ("Bennett"), a

friend living nearby. Id. Still at gunpoint, the pair forced their victims to drive

them to Bennett's home in Barnes' vehicle. Id.

When Bennett opened his door, Bonner and Scott, with guns drawn, forced

Stackfield, Barnes, and Bennett inside. Id. The two restrained their victims and

again demanded money and drugs. Id. The pair "beat Bennett with a pistol and

threatened to shoot him if he proved uncooperative," and Bennett turned over one

and a half pounds of marijuana and $3,500 in drug proceeds. Id. Bonner and Scott

departed with a bounty that included Bennett's marijuana and cash, in addition to
mobile phones and identification cards belonging to all three victims.  See id.

Less than three weeks later, on April 8, 2008, Bonner and Scott, together with
codefendant Lori Miller ("Miller"), hatched a plan to rob Miller's cocaine supplier,
Michael Pearson ("Pearson").  Id.  When Pearson arrived at Miller's residence to
pay a routine drug debt, Bonner and Scott "broke in" to Miller's home.  See id.
Bonner and Scott held Pearson and Miller at gunpoint, pistol whipping Pearson
and pretending to assault Miller.  Id.  The two "took several hundred dollars of
Pearson's drug proceeds" before forcing their victims into Pearson's car and, again
at gunpoint, demanding that Pearson direct them to his house.  See id.  Under
protest and after a beating, Pearson acceded and directed the group to the home he
shared with his wife, Ruth Miller, and their four children.  Id.  Once there, Bonner
and Scott restrained Pearson in the garage and bound Pearson's wife, cousin, and
Miller, who was still playing the role of victim.  See id.  Again threatening the lives
of the victims' children, Bonner and Scott demanded cocaine and money.  See id.
Pearson resisted, and "one of Bonner's coconspirators stabbed Pearson in the neck
with a screwdriver."  Id.  Pearson collapsed, and Scott "turned his attention and his
pistol to Pearson's wife, forcing [her] to undress."  Id.  Scott sexually assaulted her
while Bonner and the others watched.  Id.  Scott then reapplied the restraints to
Pearson's wife, leaving her and an unconscious Pearson in the garage while the
party searched their victims' home.  Id. at 124.  When Bonner and his compatriots
left with the Pearsons' jewelry, televisions, computers, clothes, cellular telephones,
identification cards, $1,800 in cash, and some crack cocaine, Pearson freed himself

to unbind his wife.  <u>See</u> <u>id.</u>  Pearson was later airlifted to a hospital where he

recovered.  <u>Id.</u>  Authorities arrested Bonner on May 13, 2008, after an extensive law

enforcement investigation.

## II.    <u>Procedural Background</u>

On February 25, 2009, a federal grand jury returned an indictment charging

Chance D. Bonner ("Bonner") and others with multiple offenses.  The indictment

charges Bonner with ten (10) counts, as follows: conspiracy to commit an offense

against the United States in violation of 18 U.S.C. § 371 (Count I); three counts of

interference with interstate commerce by threats or violence ("Hobbs Act robbery")

in violation of 18 U.S.C. § 1951 (Counts VI, VII, and XII); three counts of possession,

use, or carrying a firearm during a crime of violence in violation of 18 U.S.C. §

924(c)(1)(A) (Counts VII, X, XIV); two counts of carjacking in violation of 18 U.S.C.

§ 2119 (Counts IX and XIII); and possession of a firearm by a convicted felon in

violation of 18 U.S.C. § 922(g) (Count XV).  (Doc. 1).  The court appointed Attorney

Jeffrey A. Conrad to represent Bonner on March 16, 2009.  (Doc. 51).  Shortly

thereafter, Bonner moved to replace Attorney Conrad as counsel.  (<u>See</u> Doc. 153).

Attorney Conrad indicated that Bonner was unwilling to cooperate, (Doc. 158), and

the court appointed Attorney Ari D. Weitzman ("trial counsel") to represent him.

(Doc. 160).

Prior to trial, Bonner moved to suppress certain statements made to law

enforcement following his arrest.  (<u>See</u> Doc. 97).  The court granted Bonner's

motion to the limited extent he sought to exclude evidence of a May 13, 2008,

confession to officers based on "the officers' use of deception to procure Bonner's

[Miranda rights] waiver, coupled with Bonner's possible intoxication." Bonner, 469 F. App'x at 125.  The court denied the motion with respect to Bonner's subsequent statements, including numerous confessions.  (See Doc. 281 at 13-22).

Trial commenced on June 7, 2010, and continued through June 11, 2010.  The jury convicted Bonner of all Hobbs Act, carjacking, conspiracy, and § 924(c) counts. (Doc. 367).  The government dismissed the § 922(g) felon in possession charge after the jury returned its verdict.  Bonner's sentencing guidelines were 976 months to 1,049 months, largely as a result of his multiple § 924(c) convictions.  (See Doc. 471 at 12:21-13:8).  Trial counsel requested a sentence of fifty-seven (57) years, or 684 months, representing the aggregate of applicable mandatory minimum sentences. (Id. at 17:16-19).  After addressing the salient 18 U.S.C. § 3553(a) factors, the court imposed a sentence of 976 months imprisonment.  (Doc. 453).

Bonner appealed his judgments of conviction and sentence to the United States Court of Appeals for the Third Circuit on January 4, 2011.  (Doc. 454).  The Third Circuit, in a nonprecedential opinion, affirmed this court's judgment on May 1, 2012.  See United States v. Bonner, 469 F. App'x 119 (3d Cir. 2012).  On August 5, 2013, Bonner filed the pending motion (Doc. 527) to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, asserting fourteen different claims for ineffective assistance of counsel.  On September 25, 2013, Bonner filed a document styled as a "request for leave to amend 28 U.S.C. § 2255" to include one additional claim for ineffective assistance (Doc. 532), and attached a brief (id. at 5-50) in support of all claims.  The government filed a responsive brief (Doc. 534) on September 30, 2013, and Bonner filed a reply (Doc. 542) on November 1, 2013.  On

January 28, 2014, Bonner filed a motion (Doc. 547) for leave to modify his reply

brief.  All motions are fully briefed and ripe for disposition.

### III.  **Legal Standard**

The two-pronged test articulated in <u>Strickland v. Washington</u>, 466 U.S. 668

(1984) governs claims for ineffective assistance of counsel.  To prevail on this claim,

a petitioner must demonstrate (1) that trial counsel's representation fell below an

objective standard of reasonableness based on prevailing professional norms and

(2) that the deficient representation was prejudicial.  <u>Id.</u> at 687-88.  A determination

of ineffective assistance of counsel necessarily relies on consideration of the totality

of unique circumstances in each case.  <u>United States v. Baynes</u>, 687 F. 2d 659, 665

(3d Cir. 1982).  Conclusory allegations are insufficient to entitle a petitioner to relief

under Section 2255.  <u>See</u> <u>Sepulveda v. United States</u>, 69 F. Supp. 2d 633, 639-40

(D.N.J. 1999) (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)).

In determining whether counsel has satisfied the objective standard of

reasonableness in accordance with the first <u>Strickland</u> prong, courts must be highly

deferential toward counsel's conduct.  <u>Id.</u> at 689.  There is a strong presumption

that counsel's conduct falls within the wide range of reasonable professional

assistance.  <u>See</u> <u>United States v. Gray</u>, 878 F.2d 702, 710 (3d Cir. 1989).  Only a "rare

claim" of ineffectiveness of counsel should succeed "under the properly deferential

standard to be applied in scrutinizing counsel's performance."  <u>Id.</u> at 711 (citing

<u>Strickland</u>, 466 U.S. at 689-90).  Counsel will not be deemed ineffective for failing to

raise a meritless claim.  <u>United States v. Saunders</u>, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that, but for counsel's errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. The district court need not carry out its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. Id. at 697. Moreover, when the record affirmatively indicates that a petitioner's Section 2255 claim for relief is without merit, the claim may be decided on the record without a hearing. See Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985).

## IV.   Discussion

Bonner asserts fifteen different grounds in support of his request for Section 2255 relief. (Doc. 532). Many of Bonner's arguments overlap. For his benefit, the court will address each substantive ground of the petition separately. Ultimately, the court finds no error in trial or appellate counsel's failure to raise the objections and issues enumerated by Bonner and will deny his petition in its entirety.

### A.   Grounds I through V: Failure of Trial Counsel to Object to Duplicitous Counts, to Seek Special Verdict Form Curing Duplicity, and to Raise Duplicity Concerns on Appeal

Bonner first challenges trial counsel's decision not to object to duplicity in the indictment and verdict form, and appellate counsel's decision not to raise those concerns on appeal. According to Bonner, trial counsel committed constitutional error by failing to object to: (1) duplicitous Hobbs Act charges in Counts VI, VIII, and XII, each charging him with robbery, attempted robbery, and conspiracy; (2) duplicitous firearms charges in Counts VII, X, and XIV, each charging Bonner with use, possession of, and carrying a firearm in furtherance of a crime; (3) duplicitous

carjacking charges in Counts IX and XIII, charging Bonner with the substantive offense of carjacking in addition to attempt; (4) duplicitous firearms offenses in Counts X and XIV, for failure to "tie each firearm offense to a specific crime of violence"; and (5) failure to object to a general verdict form curing the duplicity identified in Grounds I through IV.

Duplicity is the improper joinder of distinct and separate offenses in a single count.  See United States v. Starks, 515 F.2d 112, 116 (3d Cir. 1975) (citing United States v. Jacobs, 451 F.2d 530, 534 (5th Cir. 1971), *cert. denied* 405 U.S. 9655 (1972)) (superseded on other grounds by Federal Rule of Evidence 901(a)).  As the Third Circuit Court of Appeals has observed, duplicitous counts raise a number of concerns: they may conceal the specific charges against a defendant, prevent the jury from deciding guilt or innocence with respect to a particular offense, increase risk of prejudicial evidentiary rulings, or endanger fair sentencing.  United States v. Haddy, 134 F.3d 542, 548 (3d Cir. 1998) (citing Starks, 515 F. 2d at 116; United States v. Shorter, 809 F.2d 54, 58 n.1 (D.C. Cir. 1987)).  Impermissibly duplicitous counts are properly subject to dismissal.  See United States v. Rigas, 605 F.3d 194, 210 (3d Cir. 2010).  In determining whether a particular count is impermissibly duplicitous, the Third Circuit considers

> the concerns traditionally associated with charging in one count what could be several independent charges.  These concerns include: (1) avoiding doubt that a general verdict may mask a finding of guilt as to one crime but not another; (2) avoiding risk that the jury was not unanimous as to any one of the crimes charged; (3) providing the defendant adequate notice; (4) supplying an adequate basis for sentencing; and (5) protecting against double jeopardy.

United States v. Moyer, 674 F.3d 192, 205 (3d Cir. 2012) (quoting United States v.

Root, 585 F.3d 145, 154 (3d Cir. 2009)).  To prevail on these claims, Bonner must

establish both impermissible duplicity and prejudice flowing from therefrom.

      1.      ***Hobbs Act Robbery (Grounds I and V)***

      Bonner contends that an indictment charging a defendant with a completed

offense, attempt to commit an offense, and conspiracy to commit an offense is

duplicitous and compels habeas relief.  Although the government argues that "the

indictment . . . for Count VI, VIII, and XII limited the jury to consideration of Hobbs

Act robbery and criminal attempt," a plain reading of the indictment reveals that

Bonner is correct with respect to its contents: Counts VI, VIII, and XII charge that

he and others "did obstruct, delay, and affect interstate and foreign commerce  . . .

by robbery and attempted *and conspired* so to do, and did commit and threaten

physical violence to any person or property in furtherance of a plan or purpose to

do so, and did aid and abet."  (Doc. 1 at 5-7 (emphasis added)).  The indictment is

arguably duplicitous in that it charges Bonner, in one count, with the substantive

offense of robbery, as well as conspiracy, attempt, and aiding and abetting.  See

Starks, 515 F.2d at 116 (charging "conspiracy to extort and attempt to extort" in a

single count was improper and defendants' pretrial motions to dismiss should have

been granted).

      Similarly, the verdict form provided to the jury queries whether Bonner

committed, attempted to commit, or aided and abetted the commission of Hobbs

Act robberies in Carlisle, Newville, and Chambersburg, Pennsylvania.  (See Doc.

367 ¶¶ 6, 8, 12).  The Third Circuit in Starks identified four "*separate* offenses"

under the Hobbs Act: (1) robbery; (2) extortion; (3) attempted robbery and

extortion; and (4) conspiracy to commit robbery or extortion.[4]  <u>Starks</u>, 515 F.2d at

116 (citing <u>Jacobs</u>, 451 F.2d at 534) (emphasis added).  The panel found that

including conspiracy and attempt charges in a single count—separate and distinct

---

[4] <u>Starks</u> does not identify aiding and abetting as a separate offense which
must be separately charged and deliberated by the jury.  <u>See</u> <u>Starks</u>, 515 F.2d at
116.  The court notes that aiding and abetting is routinely charged in the same
count as the substantive offense.  Moreover, the Third Circuit has long held that a
defendant "may be indicted for commission of a substantive crime and convicted by
proof showing him to be an aider and abettor."  <u>United States v. Provenzano</u>, 334
F.2d 678, 691 (3d Cir. 1964).  The court finds that combining aiding and abetting
with a substantive offense in one count of the indictment and a single question on
the verdict form was neither duplicitous nor prejudicial to Bonner.  <u>See</u> <u>United
States v. Campbell</u>, 256 F. App'x 546, 549 (3d Cir. 2007) ("It is well-established that
the aiding and abetting statute . . . 'is an alternative charge in every count, whether
explicit or implicit' " and therefore does not create duplicity concerns).  The court
recognizes that <u>Campbell</u> is not precedential but is persuaded by its *ratio decidendi*
and the policy considerations underlying the same.  Accordingly, the court will deny
Bonner's motion to the extent it relies on inclusion of aiding and abetting as a
theory of liability in each count.

offenses under the statute—violates the rule against duplicity. [5] Id. ("Since both [conspiracy to extort and attempt to extort] were improperly charged in a single count, the defendants' pre-trial motions that the indictment be dismissed . . . should have been granted.").  By that same logic, duplicity concerns ostensibly arise when jury interrogatories do not cure the inclusion of attempt and substantive charges in a single count.  See id.  Bonner contends that the improper joinder of these distinct offenses in a single count is compounded by the duplicitous verdict form, compromising his right to a unanimous verdict.  (Doc. 532 at 9-10).  Hence, the court must query whether the concerns highlighted by duplicity jurisprudence are triggered by the facts of this case, see Root, 585 F.3d at 155 (indictment should be dismissed only when failure to separately state offenses invokes policy considerations of the duplicity doctrine and "risks unfairness to the defendant"), and further whether Bonner was prejudiced thereby.  See Strickland, 466 U.S. at

---

[5] The indictment also charges Bonner with conspiracy to commit Hobbs Act robbery, among the attempt and substantive charges, ostensibly in violation of Starks' holding that separate Hobbs Act offenses must be charged separately.  See Starks, 515 F.2d at 117 (holding that indictment improperly charged conspiracy to extort and attempt to extort in a single count).  Starks did not address whether duplicity in the indictment—without more—compels reversal, because at least one other error required a new trial.  Later, in United States v. Pungitore, 910 F.2d 1084 (3d Cir. 1990), the Circuit indicated that a duplicitous indictment does not prejudice a defendant when "detailed special interrogatories" required the jury to indicate whether it convicted the defendants of murder, attempt, or conspiracy.  See id. at 1135-36 ("Arguably, the indictment was duplicitous insofar as the predicate acts were concerned . . . [but] these concerns are entirely hypothetical because the jury returned special interrogatories which indicated the theory of murder upon which the jury relied.").  In the instant matter, the verdict form for Counts VI, VIII, and XII does not refer to or permit a verdict on Hobbs Act conspiracy, and thus any duplicity arising from inclusion of conspiracy in the indictment did not prejudice Bonner.  The court's analysis proceeds only with respect to the inclusion of both attempt and substantive offenses in a single count and jury question.

694 (petitioner must show that but for counsel's failure to object, the outcome of the proceeding would have been different); see also United States v. Jackson, 513 F. App'x 51, 53 (2d Cir. 2013) ("To succeed on appeal the defendant must therefore show not only that the indictment was duplicitous, but also that the duplicitous indictment caused prejudice.").

Bonner's argument—at first blush in line with Starks—loses momentum with each of the court's subsequent inquiries.  As noted, only *impermissible* duplicity warrants dismissal of the indictment or, in the instant posture, potential habeas relief.  See Root, 585 F.3d at 155.  A crucial distinction exists between a finding that an indictment is duplicitous and one of impermissible and prejudicial duplicity.  Id. (finding a count to be "impermissibly duplicitous" only when a failure to separately state the offense "risks unfairness to the defendant") (citing United States v. Sturdivant, 244 F.3d 71, 75 n.3 (2d Cir. 2001); Cohen v. United States, 378 F.2d 751, 754 (9th Cir. 1967)).  An indictment and resulting verdict form are impermissibly duplicitous and subject to dismissal only when the policy concerns identified by the Circuit are implicated.  E.g., Pungitore, 910 F.2d at 1136 (duplicitous indictment did not ultimately implicate Starks' concerns and did not warrant a new trial)).

Bonner asserts that duplicity in the indictment and verdict form deprived him of a fair and unanimous verdict.  (Doc. 532 at 9-10); see Moyer, 674 F.3d at 205 (identifying "risk that the jury was not unanimous" as potential duplicity concern). The court disagrees.  During trial, the court specifically charged the jury that it could find Bonner guilty of Counts VI, VIII, and XII under either an attempt theory or a substantive offense theory.  (See Tr. Day 5 at 78:11-78:4; see also id. 115:17-

116:16 (clarifying which counts include both attempt and substantive charges)).[6]
The court expressly admonished the jury that it may only find Bonner guilty of a
particular offense if its verdict was completely unanimous.  (Id. 105:14-18 ("Your
verdict must represent the collective judgment of the jury.  In order to return a
verdict, it is necessary that each juror agree to it.  Your verdict, in other words, *must
be unanimous*." (emphasis added)); id. 108:5-6 ("The answer to each question must
be the *unanimous answer* of the jury." (emphasis added)).  The court presumes that
the jury understood and applied its instructions.  See Pungitore, 910 F.2d at 1136
(presuming jury followed the court's instructions that it must "deliver a unanimous
verdict as to a particular theory of murder") (citing Francis v. Franklin, 471 U.S.
307, 324 n.9 (1985)); see also United States v. Bryant, 655 F.3d 232, 252 (3d Cir. 2011).
The court harbors no doubt as to the unanimity of the jury's verdict on Counts VI,

---

[6] Citations to "Tr. Day ___ at ___" are to the transcript of Bonner's trial, held
from June 7 through June 11, 2010.  (See Docs. 346-50).

VIII, and XII.[7]  As such, the court finds no error in trial counsel's failure to move for

dismissal of the indictment or to object to the verdict form.

Moreover, Bonner has identified no Strickland prejudice flowing from the

perceived errors in trial counsel's performance.  Strickland requires petitioners to

demonstrate not only an egregious error rendering trial counsel's representation

constitutionally deficient, but also a showing that but for trial counsel's error, there

is a reasonable probability that the result at trial would have been different.  See

Strickland, 466 U.S. at 694.  The Third Circuit describes Strickland's reasonable

probability requirement as requiring petitioners to show "a probability sufficient to

undermine confidence in the outcome" of the trial.  Jacobs v. Horn, 395 F.3d 92, 105

(3d Cir. 2005) (quoting Strickland, 466 U.S. at 693–94).  Trial counsel's performance

---

[7] Other than verdict unanimity concerns and reciting the general vices of
duplicity, Bonner fails to identify any additional duplicity issues specific to his case.
None of those traditional concerns present here.  The structure of the indictment
did not compel adverse evidentiary rulings.  Nor is double jeopardy an issue, as a
defendant cannot be convicted of both attempt and a completed offense.  See
United States v. Bicaksiz, 194 F.3d 390, 395 n.7 (2d Cir. 1999) (observing that "the
[Hobbs Act] Amendments dealt with attempt and substantive offenses in separate
paragraphs, even though a defendant cannot be convicted of both attempt and a
substantive offense, let alone be punished for both.") (citing United States v.
Madonna, 582 F.2d 704, 705 (2d Cir. 1978)).  Further, Bonner identifies no
sentencing disparities.  In fact, the Sentencing Guidelines for attempt direct the
court to the base offense level for the underlying substantive offense, absent limited
circumstances not present here.  See, e.g., U.S. SENTENCING GUIDELINES MANUAL §
2X1.1(a) (2014) ("Base Offense Level: The base offense level from the guideline for
the substantive offense, plus any adjustments from such guideline for any intended
offense conduct that can be established with reasonable certainty."); see also id. §
2X1.1(a) cmt. background ("In most prosecutions for . . . attempts, the substantive
offense was substantially completed . . . . In such cases, no reduction of the offense
level is warranted."); United States v. Geevers, 226 F.3d 186, 197-98 (3d Cir. 2000)
(no error in district court's declination to apply § 2X1.1 and ultimate sentence even
when it was unclear whether defendant pled guilty to attempted or completed bank
fraud).

ultimately "must be evaluated in light of the totality of the evidence at trial." Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006) (quoting United States v. Gray, 878 F.2d 702, 710–11 (3d Cir. 1989)).  Stated differently, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Id.  The court finds, and Bonner does not refute, that the record overwhelmingly supports his Hobbs Act convictions.

Ample record evidence established that in March and April of 2008, Bonner and a number of cohorts robbed suspected drug traffickers of drugs, money, and other valuables.  On March 22, 2008, Bonner and his codefendant Donald Scott ("Scott") robbed Eric Clarke ("Clarke") outside his home in Carlisle, Pennsylvania, demanding drugs and money at gunpoint and threatening to harm Clarke's family if he failed to comply.  (See Tr. Day 2 at 75:13-83:9 (Hodge), 112:16-120:2 (Clarke); see also id. 221:8-228:7 (Bass)).  When Clarke successfully fled from Bonner and Scott, the pair departed and targeted Quinton Stackfield ("Stackfield") and his then-pregnant girlfriend, Renee Barnes ("Barnes"), at their residence in Newville, Pennsylvania.  (See id. 152:2-160:16 (Stackfield), 181:16-187:15 (Barnes); see also id. 228:12-231:7 (Bass)).  Bonner and Scott forced Stackfield and Barnes into their home at gunpoint, demanding drugs and money and forcing them to identify their marijuana supplier, Warren Bennett ("Bennett").  (Id. 156:17-159:13 (Stackfield), 182:12-184:3 (Barnes)).  Bonner and Scott then forced Stackfield and Barnes into Barnes' vehicle and directed them to drive to Bennett's home.  (See id. 156:23-159:13 (Stackfield), 183:12-187:11 (Barnes); see also id. 228:12-231:7 (Bass)).  After "pistol whipping" Bennett, the pair took a large quantity of marijuana, cash, and

other materials from his home.  (Id. 192:2-202:9 (Bennett); see also id. 156:23-159:13 (Stackfield), 183:12-187:11 (Barnes)).  Bonner and Scott left Bennett's home after threatening to kill the victims if they contacted police.  (See id.)

Bonner's involvement in the robbery spree culminated on April 8, 2008, when he and his codefendants traveled to Chambersburg, Pennsylvania, to rob Michael Pearson ("Pearson"), a known cocaine trafficker.  The defendants concocted a plan to stage a robbery at the residence of Pearson's distributor, Lori Miller ("Miller"), when Pearson arrived to pay a routine drug debt.  (See Tr. Day 3 at 57:24-74:7 (Pearson); see also id. 234:6-240:15 (Bass)).  The pair then forced Pearson to drive to his residence to obtain more drugs and drug proceeds.  (Id. 65:2-69:17 (Pearson)).  Pearson complied and drove defendants to his home, where his wife, Ruth Miller, and their young children were sleeping.  (See id.)  At gunpoint, defendants forced Pearson to turn over money, cocaine, and other valuables.  (Id. 22:12-26:2 (Ruth Miller); see also 69:18-70:10 (Pearson)).  Pearson's wife was sexually assaulted, and Pearson stabbed in the neck, during this encounter.  (Id. 22:12-26:2 (Ruth Miller), 70:12-71:4 (Pearson)).  Crucially, Bonner confessed to the conduct underlying these crimes on numerous occasions.  (See Tr. Day 4 at 129:7-130:16, 137:23-139:16 (May  14, 2008 confession to Detective O'Connor), 169:20-171:14 (May 14, 2008 confession to Detective Kurtz), 189:7-199:7 (May 20, 2008 confession to Trooper Hershey), 215:1-228:3 (June 18, 2008 confession to ATF Special Agent Endy)).

Bonner offers only the blanket contention that "he is actually innocent" of counts VI, VIII, and XII in support of the Strickland prejudice prong.  He offers no argument to refute the abundant evidence of guilt presented at trial, nor does he

dispute the Third Circuit's recitation of the facts underlying his federal convictions.

Bonner's unsubstantiated allegation of innocence falls well short of Strickland's

exacting requirements.  See Strickland, 466 U.S. at 693 (prejudice prong "requires

showing that counsel's errors were so serious as to deprive the defendant of a fair

trial, a trial whose result is reliable").  Evidence at trial unequivocally supports the

jury verdict under the Hobbs Act, and the court harbors no doubts as to the fairness

of Bonner's trial.  In short, Bonner establishes neither a constitutionally deficient

representation nor prejudice derived therefrom.  See id.  The court will deny his

motion with respect to Hobbs Act duplicity and verdict form concerns.

### 2.  *Firearms Offenses (Grounds II, IV, and V)*

Bonner's arguments with respect to the firearms charges against him mirror

his Hobbs Act contentions.  Bonner asserts that Counts VII, X, and XIV are tainted

by duplicity in charging him with use of *and* carrying *and* possession of a firearm, in

violation of 18 U.S.C. § 924(c).  Bonner contends that including multiple charges in

one count prohibits the court from determining on which theory the jury convicted

him.  This contention is without merit.

As a threshold matter, Bonner offers no meaningful argument establishing

that the joinder of use, possession, and carrying offenses in a single count is itself

impermissibly duplicitous.  See United States v. Scott, 463 F. App'x 85, 89 (3d Cir.

2012) (denying direct appeal on § 924(c) duplicity issue when "indictment merely

tracked the language of § 924(c) itself" and defendant could not show "it concealed

the specific charges against him").[8]  Nothing in the record or in Bonner's papers demonstrates that the charges in the indictment improperly influenced evidentiary rulings, endangered his sentencing, or concealed the specific weapons charges against him.  Thus, none of the traditional concerns of duplicity are implicated by the § 924(c) charges *sub judice*.  See Root, 585 F.3d at 155.

Moreover, although the indictment tracked the language of 18 U.S.C. § 924(c) and charged Bonner with use of, carrying, *and* possession of a firearm during a crime of violence, the court instructed the jury *only* with respect to the possession offense.  (Tr. Day 5 at 100:17-102:20 (limiting instruction on § 924(c) charges to possession offense)).  Under similar circumstances, the Third Circuit has held that, "because [the court] allowed only one of the two § 924(c) prongs to go to the jury, we cannot see how the indictment prevented the jury from deciding guilt or innocence with respect to a particular offense."  Scott, 463 F. App'x at 89 (rejecting argument on direct appeal when court only allowed possession charge to go to jury); see also Jackson, 513 F. App'x at 53 (rejecting similar § 924(c) arguments and concluding that defendant was not prejudiced by the language of the indictment or the jury charge); Wilson v. United States, No. 2:05-cr-279, 2011 WL 1235719, at *10-11 (D.S.C. Mar. 30, 2011) (same).  Further, as noted *passim*, Bonner suffered no prejudice as a result of any perceived error in counsel's performance.  Copious record evidence, including Bonner's confessions, support his § 924(c) convictions.  (See, e.g., Tr. Day 4 at 129:7-130:16, 137:23-139:16, 169:20-171:14, 189:7-199:7, 215:1-228:3 (confessions);

---

[8] The court acknowledges that Scott is a non-precedential decision but is nonetheless persuaded by the panel's *ratio decidendi*.

see also Tr. Day 2 at 112:16-120:2, 156:17-159:13, 182:12-184:3, 192:2-202:9 (witnesses testifying to defendants displaying firearms during March 22, 2008 robbery), Tr. Day 3 at 57:24-74:7, 22:12-26:2 (witnesses testifying to defendants displaying firearms during April 8-9, 2008 robbery)).  Assuming *arguendo* that trial counsel erred by not objecting to the indictment or verdict form, Bonner cannot establish prejudice flowing therefrom.  The court will deny his motion on this ground.

Bonner also contends that Counts X and XIV of the indictment, and the corresponding paragraphs of the verdict form, are duplicitous for failing to tie each firearms charge to a specific crime of violence.  Both counts charge the defendant with possessing, using, and carrying a firearm "in furtherance of a crime of violence . . . namely interference with commerce by threats or violence *and* carjacking." (Doc. 1 at 8-10 (emphasis added)).  Tracking the indictment, the verdict form for each count queries whether Bonner possessed, used, and carried a firearm "in furtherance of the commission of a Hobbs Act robbery *and* carjacking offense." (Doc. 367 at 2-3 (emphasis added)).  The verdict form specifically identifies the March 22, 2008 robbery in Newville as the underlying crime in Count X and the April 8, 2008 robbery in Chambersburg as the underlying crime in Count XIV.  (Id.) The jury found Bonner guilty of each count, affirmatively announcing its finding that Bonner possessed a firearm in the commission of *both* the Hobbs Act robbery *and* the carjacking offense.  (See id.)  There is no ambiguity or uncertainty in these findings.  The jury's verdict makes clear that it found Bonner guilty of possessing a firearm in connection with both the robbery and the carjacking offenses identified

by date and location in the form.  The court rejects Bonner's contention that the verdict form for Counts X and XIV obscures the unanimity of the jury's verdict.

### 3.    *Carjacking Offenses (Grounds III and V)*

Bonner next contends that counsel erred by not objecting to Counts IX and XIII for many of the same reasons underlying his Hobbs Act claim.  The indictment charges Bonner, in Counts IX and XIII, with the substantive offenses of carjacking as well as attempt to do so.[9]  Similarly, the verdict form asks the jury to determine whether Bonner "took or attempted to take from a person or presence of another by force, violence, and intimidation a motor vehicle . . . or aided and abetted another in doing so."  (Doc. 367 at 2-3).  The Third Circuit has not stated, as expressly as it did in Starks, that carjacking and attempted carjacking are separate offenses for duplicity purposes.[10]  The court nonetheless concludes that, even if Counts IX and

---

[9] To the extent Bonner contends that aiding and abetting is a separate offense from the substantive offense of carjacking, the court rejects this argument. As noted *supra*, the inclusion of aiding and abetting and the substantive offense in a single count is neither duplicitous nor prejudicial.  See Campbell, 256 F. App'x at 549.

[10] The court notes with interest the Supreme Court's decision in Jones v. United States, 526 U.S. 227 (1999), which construed the statute "as establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." Id. at 251-52.  Although duplicity was not at issue in Jones, it bears noting that the Court did not identify attempt as a crime separate from the statute's substantive offenses.  See id. (holding that carjacking statute's three enumerated paragraphs outlining applicable sentences create three substantive offenses rather than sentencing enhancements); see also United States v. Rigas, 605 F.3d 194, 209 (3d Cir. 2010) (citing Jones for proposition that when Congress intends to create separate and distinct offenses, "it typically utilizes multiple subsections or separate clauses with semicolons to enumerate the separate crimes").

XIII are duplicitous, they are not impermissibly so and, in any event, Bonner was not prejudiced by any perceived error.

As noted *supra*, only impermissible duplicity compels relief. <u>See</u> <u>Root</u>, 585 F.3d at 155.  Bonner again asserts that duplicity in the indictment and verdict form deprived him of a fair and unanimous verdict.  (Doc. 532 at 16-20); <u>see</u> <u>Moyer</u>, 674 F.3d at 205 (identifying "risk that the jury was not unanimous" as potential duplicity concern).  The court disagrees.  Like the Hobbs Act counts, the court specifically charged the jury that it could find Bonner guilty of carjacking in Counts 9 and 13 on either an attempt theory or a substantive offense theory.  (<u>See</u> Tr. Day 5 at 78:11-79:4; <u>see</u> <u>also</u> <u>id.</u> 115:17-116:16 (identifying which counts include both attempt and substantive charges)).  The court expressly admonished the jury that it may only find Bonner guilty of a particular offense if its verdict was completely unanimous. (<u>Id.</u> 105:14-18 ("Your verdict must represent the collective judgment of the jury.  In order to return a verdict, it is necessary that each juror agree to it.  Your verdict, in other words, *must be unanimous*." (emphasis added)); <u>id.</u> 108:5-6 ("The answer to each question must be the *unanimous answer* of the jury." (emphasis added)).  The court presumes the jury understood and applied these instructions. <u>See</u> <u>Pungitore</u>, 910 F.2d at 1136 ("We will presume that the jury followed [the] instruction . . . to deliver a unanimous verdict as to a particular theory of murder") (citing <u>Francis</u>, 471 U.S. at 324 n.9); <u>see</u> <u>also</u> <u>Bryant</u>, 655 F.3d at 252.  In light of these unambiguous

instructions, the court is confident in the unanimity of the jury's verdict.[11]  The court finds no error in trial counsel's failure to move for dismissal of the indictment or to object to the verdict form.

More importantly, Bonner again fails to demonstrate Strickland prejudice flowing from the errors he perceives in counsel's performance.  Jacobs, 395 F.3d at 105 (petitioner must show "a probability sufficient to undermine confidence in the outcome" of the trial) (quoting Strickland, 466 U.S. at 693–94).  The court evaluates trial counsel's performance "in light of the totality of the evidence at trial."  Rolan, 445 F.3d at 682 (quoting Gray, 878 F.2d at 710–11).  Under this exacting standard, the court again concludes that overwhelming record support undergirds the jury's verdict.  Id.  Extensive trial testimony established that on March 22 and April 8 of 2008, Bonner and his codefendants succeeded in taking multiple motor vehicles from several victims at gunpoint.  See supra at 15-17.  Bonner confirmed this version of events in his repeated pretrial confessions.  See Tr. Day 4 at 129:7-130:16, 137:23-139:16, 169:20-171:14, 189:7-199:7, 215:1-228:3.  Bonner's singular allegation of "actual innocence" fails to cast any doubt on the integrity of the jury's verdict.  See Strickland, 466 U.S. at 693 (ineffective assistance claim fails unless defendant shows "that the deficient performance prejudiced the defense").

Finally, Bonner contends that Count XIII itself is duplicitous for identifying two separate carjacking incidents and permitting the jury to convict with respect to either or both.  (See Doc. 532 at 20).  The verdict form asked whether Bonner took

---

[11] Bonner again identifies no duplicity concerns specific to this claim, and the court's own review of the record reveals that the traditional concerns of impermissible duplicity are not implicated here.  See supra note 7.

or attempted to take the BMW 325i *and* the Dodge Durango.  (See Doc. 367 at 3).
That is, the jury was charged in the conjunctive.  (See id.)  By selecting "guilty," the
jury concluded unambiguously that Bonner was guilty of carjacking *both* the BMW
and the Dodge vehicles.  (See id.)  The court will deny Bonner's motion on this
separate but related ground.

### 4.    *Ground V: Duplicity in Conspiracy Charge*

In addition to the general verdict arguments addressed *supra*, Bonner's fifth
ground for relief also asserts that the indictment and verdict form are duplicitous in
that the jury did not affirmatively indicate which offense or offenses he conspired to
commit.  Bonner argues that "some jurors may have believed that [he] conspired to
commit robbery, while other jurors believed he conspired to commit carjacking, and
others believed he conspired to commit a firearm offense."  (Doc. 532 at 25).  The
court rejects this argument.

The verdict form asked whether Bonner "did engage in a conspiracy to
commit an offense against the United States," and the jury found Bonner guilty.
(Doc. 367 at 1).  The court expressly instructed the jury with respect to Count I that
it must be unanimous with respect to both the ultimate conspiracy verdict and the
offense or offenses underlying that verdict.  (Tr. Day 5 at 84:20-85:9).  The court
admonished:

> The indictment charges a conspiracy to commit several
> federal crimes.  The government does not have to prove
> that the alleged conspirators agreed to commit all of these
> crimes.  The government, however, must prove that they
> agreed to commit at least one of the object crimes, *and*
> *you must unanimously agree on which crime*.  You cannot
> find Chance Bonner guilty of conspiracy unless you

> *unanimously agree that the same federal crimes were the objective of the conspiracy.* It is not enough if some of you agree that one of the charged crimes was the objective of the conspiracy and others agree that a different crime was the objective of the conspiracy.

(<u>Id.</u> (emphasis added)). The court again presumes that the jury followed its instruction and unanimously agreed upon the underlying offenses. <u>See</u> <u>Bryant</u>, 655 F.3d at 252 (citing <u>United States v. Lee</u>, 573 F.3d 155, 162 (3d Cir. 2009)) ("[W]e generally presume that juries follow their instructions."); <u>see also</u> <u>United States v. Andrews</u>, 681 F.3d 509, 526 (3d Cir. 2012) ("[W]e presume that juries follow their instructions regarding a count in returning a verdict on that count."). Moreover, the remainder of the verdict form indicates that the jury in fact found Bonner guilty of *each* of the underlying offenses charged. Accordingly, the jury's verdict is neither equivocal and nor duplicitous. The court will deny Bonner's motion on this ground.

### B.     Ground VI: Failure of Trial Counsel to Move for Rule of Lenity

Bonner contends in his sixth ground for relief that counsel was ineffective in "failing to move for rule of lenity due to the ambiguousness of" 18 U.S.C. § 924(c). (Doc. 532 at 27). He argues that the statute is ambiguous in its silence as to how the consecutive sentences it permits should be imposed. (<u>See</u> <u>id.</u>) The Third Circuit has expressly rejected this argument. <u>See</u> <u>United States v. Walker</u>, 473 F.3d 71, 84-85 (3d Cir. 2007) (perceiving "no doubt" about the scope of § 924(c) and rejecting defendant's position "that his harsh mandatory consecutive sentence could have been avoided" by application of the rule of lenity). The court is unpersuaded by Bonner's argument, which is directly contrary to the clear holding of <u>Walker</u>. The court will deny Bonner's motion on this ground.

C.    **Grounds VII and VIII: Failure of Trial Counsel to Object to Model Hobbs Act Instructions and of Appellate Counsel to Raise Issue on Appeal**

Bonner asserts that trial counsel was ineffective for failing to object to the Third Circuit Model Instructions with respect to Hobbs Act robbery.  First, he argues that the "probable" or "potential" standard as explained to the jury cannot be applied to Counts VI, VIII, and XII, because the jury must find at least a "measurable effect" on interstate commerce under the Act.  (Doc. 532 at 28-31). Second, Bonner alleges that the court "foreclosed the interstate nexus element" altogether when it instructed the jury that interference with illegal drug trafficking "may violate the Hobbs Act."  (Id.; also Tr. Day 5 at 96:6-19).  Bonner contends that appellate counsel was similarly ineffective for failing to raise this issue on appeal.

As a threshold matter, the court notes that this argument *was* raised before and rejected by the Third Circuit on direct appeal.  See Bonner, 469 F. App'x at 128-131.  The Third Circuit held that to sustain a Hobbs Act conviction, the government need only "introduce evidence that Bonner attempted to commit a robbery that had the *potential* to affect interstate commerce" and found that sufficient evidence at trial supports the jury's finding.  Id.  Bonner's argument *sub judice* largely tracks the argument rejected by the appellate court.  Abundant authority supports the court's inclusion of the "potential" or "probable" impact instruction.  See, e.g., United States v. Urban, 404 F.3d 754, 765-66 (3d Cir. 2005) ("There thus appears to be little doubt that our precedent supports the District Court's use of 'potential' effect . . . in the jury instructions."); see also United States v. Manzo, 636 F.3d 56, 61 n.4 (3d Cir. 2011).  The Urban court notably rejected the defendants' reliance on the

"constitutional doubt" principles articulated in <u>United States v. Lopez</u>, 514 U.S. 549 (1995) and <u>United States v. Morrison</u>, 529 U.S. 598 (2000) and cited generally by Bonner in his motion.  <u>See</u> <u>Urban</u>, 404 F.3d at 766.  The court declines to revisit the Third Circuit's disposition of Bonner's interstate commerce arguments.

Bonner also maintains that the court's instructions with respect to the interstate commerce element impermissibly supplanted the jury's fact-finding responsibility.  (<u>See</u> Doc. 532 at 33).  Bonner takes issue with the court's instruction to the jury that: "Drug trafficking affects interstate commerce, and interference with a drug trafficker's trade *may violate* the Hobbs Act."  (Tr. Day 5 at 96:6-8). Bonner contends that this instruction unequivocally informed the jury that "the interstate element was established" and "improperly supplanted the required jury finding."  (Doc. 532 at 33).  The court disagrees.  The instruction, read in full and in context, merely explains to the jury that despite its illegal nature, drug trafficking is nonetheless an activity that affects interstate commerce such that interference with drug trafficking activities *may* violate the Hobbs Act.  (Tr. Day 5 at 96:6-19).  The court explained that, in order to satisfy this element, the government must prove that the illegal drugs sought or obtained during the various robberies had "traveled in interstate commerce," and that cash sought or obtained was "connected" to those drug trafficking activities.  (<u>See</u> <u>id.</u>)  The court rejects Bonner's contention that the court impermissibly instructed the jury that this element is satisfied as a matter of law.

**D.      Ground IX: Failure of Appellate Counsel to File Timely Petition for Writ of *Certiorari* with Supreme Court**

In his ninth ground for relief, Bonner argues that counsel was ineffective for failing to file a petition for *certiorari* with the Supreme Court of the United States, contending that he presented "numerous . . . issues with merit" to counsel, who declined to file an appeal of the Third Circuit's decision.[12]  (See Doc. 532 at 5).  The court notes that Bonner's two-sentence claim fails to identify exactly which issues counsel was ineffective for failing to appeal.  (Id.)  In any event, the court cannot conclude that counsel's failure to file a petition of *certiorari* was "outside the wide range of professional competent assistance," Strickland, 466 U.S. at 690, given that no claim presented genuine questions for appellate review.  The arguments raised on direct appeal were without merit, see Bonner, 469 F. App'x 119, and Bonner's arguments before this court are similarly flawed.  Cf. Smith v. Robbins, 528 U.S. 259, 285 (2000) (reviewing petitioner's ineffective assistance claim for failure of appellate counsel to file an appellate merits brief and concluding that he must demonstrate both (1) nonfrivolous issues and (2) a reasonable probability that but for the failure to brief those issues, he would have prevailed on appeal).  Counsel's

---

[12] At least one court has rejected a petitioner's identical ineffective assistance claim outright, suggesting that defendants are not entitled to counsel when petitioning for *certiorari*.  See United States v. Becker, No. 01-cr-156, 2005 WL 3110650, at *17-20 (S.D.N.Y. Nov. 18, 2005) ("Because of the discretionary nature of the Supreme Court's jurisdiction, there is no right to counsel in seeking a writ of *certiorari* . . . .").

decision not to petition for *certiorari* does not fall outside of the wide range of professional deference that <u>Strickland</u> demands.[13]  <u>See</u> <u>Strickland</u>, 466 U.S. at 690.

Moreover, copious testimony, and Bonner's own confessions, support his convictions and refute the claims raised in the instant petition.  <u>See</u> *supra* at 15-17. Bonner thus has failed to establish any prejudice flowing from this purported error. For this additional reason, the court rejects Bonner's contention that counsel's failure to petition the Supreme Court for *certiorari* violates his Sixth Amendment right to effective appellate representation.

**E.    Ground X: Failure of Trial Counsel to Object to Use of Expert Testimony to Offer Lay Opinion and of Appellate Counsel to Raise Issue on Appeal**

Bonner next challenges trial counsel's alleged failure "to object to the use of expert testimony" by government witness Chief John Goshert ("Goshert"), who testified as to the likely geographic origins of several types of drugs.  (<u>See</u> Doc. 532 at 36-37).  Bonner similarly contends that appellate counsel failed to raise this issue on direct review.  (<u>See</u> <u>id.</u>)  Bonner's contention is entirely belied by the trial and appellate records of this case.

Bonner's trial counsel *did* object at trial, on multiple occasions, to the admission and scope of Goshert's testimony to establish the origins of marijuana, heroin, and cocaine.  (Tr. Day 4 at 30:1-38:18).  The court overruled the objection, noting that Goshert's testimony fell "within the scope of his expert qualifications." (<u>Id.</u> 36:13-16; <u>see</u> <u>id.</u> 30:1-38:18).  The Third Circuit, on direct review, rejected the

---

[13] Moreover, Bonner's petition makes clear that he was aware of his right to petition for *certiorari* but fails to explain why he did not do so independently when counsel allegedly refused to file on his behalf.

exact argument Bonner raises *sub judice*: that Goshert's testimony is inadmissible as violative of Federal Rule of Evidence 702 and the Supreme Court's decision in <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579 (1993).  <u>See</u> <u>Bonner</u>, 469 F. App'x at 133-34 ("[T]he District Court acted within its discretion in concluding that Chief Goshert's testimony about drugs' origins was reliable and admissible testimony.").  The court will not disturb the Third Circuit's holding on this issue.

**F.      Ground XI through XIV: Imposition of, and Failure of Trial Counsel to Object to, Consecutive 25 Year Sentences for Violation of § 924(c)**

The final grounds of Bonner's habeas petition pertain to sentencing, specifically assigning error to the court's imposition of consecutive twenty-five (25) year sentences for multiple convictions under 18 U.S.C. § 924(c).  Bonner contends that, because a finding that a § 924(c) violation is a second or subsequent offense increases a defendant's mandatory minimum sentencing exposure by twenty (20) years, "this fact becomes an element of the offense, that must be charged and proved to a jury beyond a reasonable doubt."  (Doc. 532 at 38).  According to Bonner, because the fact was neither charged in the indictment nor submitted to the jury, the court exceeded its authority in applying two consecutive twenty-five (25) year sentences.  Bonner relies on the Supreme Court's recent decision in <u>Alleyne v. United States</u>, ___ U.S. ___, 133 S. Ct. 2151 (2013), to support his argument.  (Doc. 532 at 38-39).

In <u>Alleyne</u>, the Supreme Court concluded that any fact which enhances a defendant's mandatory minimum sentencing exposure is an element of the offense which specifically must be submitted to and found by the jury.  <u>See</u> <u>Alleyne</u>, 133 S.

Ct. at 2163 (overruling <u>Harris v. United States</u>, 536 U.S. 545 (2002) and holding "that facts that increase mandatory minimum sentences must be submitted to the jury"). Bonner contends that the court erred in determining that two of his convictions under § 924(c) were second and subsequent convictions mandating application of two consecutive twenty-five (25) year minimums.  According to Bonner, <u>Alleyne</u> requires the court to put that inquiry to a jury.

Bonner's argument misses the mark.  The jury found Bonner guilty of three separate violations of § 924(c).  (Doc. 367 at 1-3).  In other words, the jury did "actually [find] all of the facts giving rise to the enhanced, consecutive 25 year sentencing provision, beyond a reasonable doubt," that is: that Bonner had committed three separate violations of the statute.  <u>See</u> <u>United States v. Askew</u>, No. 03-244, 2014 U.S. Dist. LEXIS 57779, at *7-9 (E.D. Pa. April 25, 2014) (concluding that neither <u>Alleyne</u> nor its predecessor, <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), require a separate jury finding to trigger § 924(c)'s consecutive 25 year sentencing provision).  Bonner's assertion to the contrary is thus without merit.

> **G.     Ground XV: Failure of Trial Counsel to Object to Court's Finding that the Defendant "Brandished" a Firearm at Sentencing**

Bonner lastly seeks to amend his petition to include another claim based on <u>Alleyne</u>, asserting that trial counsel was ineffective for not objecting to the court's finding that he "brandished" a firearm—a finding that increased his mandatory minimum sentencing exposure from five (5) to seven (7) years.  (<u>See</u> Doc. 532).  The Third Circuit recently held that <u>Alleyne</u> does not apply retroactively on collateral review.  <u>United States v. Reyes</u>, 755 F.3d 210, 213 (3d Cir. 2014) ("Therefore, <u>Alleyne</u>

does not provide [petitioner] with any basis for relief because the Supreme Court has not chosen to apply <u>Alleyne</u>'s new rule retroactively to cases on collateral review."). As a consequence, the court will deny Bonner's <u>Alleyne</u> claim.[14]

## V.  <u>Conclusion</u>

For all of the foregoing reasons, the court finds that the record conclusively establishes that Bonner is not entitled to Section 2255 relief. The court will deny his motion (Doc. 527) to vacate, set aside, or correct sentence under 18 U.S.C. § 2255 and both motions (Docs. 532, 547) to amend his initial petition. An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        November 6, 2014

---

[14] Because Bonner's motion (Doc. 547) to amend his response relates solely to his <u>Alleyne</u> claim and does not alter the court's analysis herein, the court also will deny that motion.