## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:09-CR-72** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **CHANCE D. BONNER,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

A jury convicted defendant Chance D. Bonner of multiple offenses, including three counts of possessing, using, and carrying a firearm in furtherance of Hobbs Act robbery and carjacking in violation of 18 U.S.C. § 924(c)(1)(A).  Bonner moves pursuant to 28 U.S.C. § 2255 to vacate his Section 924(c) convictions based on the United States Supreme Court's decision in <u>United States v. Davis</u>, 588 U.S. ___, 139 S. Ct. 2319 (2019).

## I.    Factual Background & Procedural History

In February 2009, a federal grand jury returned a 15-count indictment charging Bonner and four codefendants (Donald A. Scott, DeShawn Livingston, Lori Ann Miller, and Miqual Hodge) with conspiracy against the United States and various Hobbs Act robbery, carjacking, and firearms offenses.  The charges arose from a string of armed robberies and carjackings in southcentral Pennsylvania. The indictment charged Bonner in Count 1, Counts 6 through 10, and Counts 12 through 15.

Count 1 charged that Bonner conspired with others to commit multiple offenses against the United States—"namely interference with interstate and

foreign commerce by threats and violence, carjacking, possession of firearms by a convicted felon, transfer of firearms knowing that such firearms will be used in a crime of violence, and possessing, using, and carrying firearms during and in relation to a crime of violence"—in violation of 18 U.S.C. § 371.  (See Doc. 1 at 1-3). Counts 6, 8, and 12 charged that Bonner and others committed, attempted to commit, conspired to commit, or aided and abetted the commission of Hobbs Act robbery in violation of 18 U.S.C. §§ 2 and 1951.  Specifically, those counts charged that defendants, by robbery, did

> obstruct, delay, and affect interstate and foreign
> commerce and the movement of any article or commodity
> in commerce . . . and attempted and conspired so to do,
> and did commit and threaten physical violence to any
> person or property in furtherance of a plan or purpose
> to do so, and did aid and abet.

(See Doc. 1 at 5-6, 6-7, 8-9).  Counts 9 and 13 charged that Bonner and others committed, attempted to commit, or aided and abetted the commission of carjacking; that is, defendants "with the intent to cause death or serious bodily harm took and attempted to take from the person or presence of another by force, violence, and intimidation a motor vehicle that has been transported in interstate commerce, . . . and did aid and abet" in violation of 18 U.S.C. §§ 2 and 2119.  (See Doc. 1 at 7, 9).

Count 7 charged Bonner and others with possessing, using, and carrying a firearm, and aiding and abetting same, "during, in relation to, and in furtherance of a crime of violence for which he could be prosecuted in a court of the United States, namely interference with commerce by threats or violence," in violation of 18 U.S.C.

§§ 2 and 924(c)(1)(A)(i).  (See Doc. 1 at 6).  Counts 10 and 14 also charged Section

924(c) violations, except those counts identified the underlying crimes of violence as

both "interference with commerce by threats or violence and carjacking."  (See id.

at 7-8, 9-10).[1]

Bonner proceeded to trial in June 2010.[2]  After three days of evidence,

the jury found Bonner guilty on all counts.  As to each of the Hobbs Act robbery

convictions (Counts 6, 8, and 12), the jury found that Bonner "did commit, or

attempt[ed] to commit, or aided and abetted [another in] the commission of a Hobbs

Act robbery."  (Doc. 367 at 1, 2, 3).  On the carjacking convictions (Counts 9 and 13),

it found that Bonner "with the intent to cause death or serious bodily harm, took

or attempted to take from a person or presence of another by force, violence, and

intimidation[,] a motor vehicle . . . or aided and abetted another in commission of

such an offense."  (Id. at 2; see id. at 3 (". . . or aided and abetted another in doing

so")).  For the Section 924(c) convictions, it found that Bonner "did possess, use,

and carry a firearm in furtherance of the commission of a Hobbs Act robbery"

(Count 7) or "in furtherance of the commission of a Hobbs Act robbery and

---

[1] Count 15 charged Bonner and others with unlawful possession of a firearm
by a convicted felon and aiding and abetting same in violation of 18 U.S.C. §§ 2 and
922(g)(1).  (Doc. 1 at 10).  The government moved to dismiss Count 15 on the final
day of trial and that count was not put to the jury.  (See generally Doc. 367).

[2] The court severed the charges against Bonner for separate trial on motion
of the government.  (See Doc. 242).  Scott and Livingston proceeded to trial after
Bonner, in August 2010.  (See Doc. 403).  Miller and Hodge entered guilty pleas and
did not proceed to trial.  (See Docs. 308, 314).

carjacking offense" (Counts 10 and 14) or "aided and abetted another in doing so." (Id. at 1, 2, 3).

The court sentenced Bonner to an aggregate term of 976 months' imprisonment, driven in large part by an 84-month statutory mandatory minimum term on Count 7 and two 300-month statutory mandatory minimum terms on each of Counts 10 and 14, all of which were required by statute to be served consecutively to each other and to all other counts.  (See Doc. 453 at 3, 4); see also 18 U.S.C. § 924(c)(1)(A), (C) (2011).  Bonner appealed his convictions to the Third Circuit Court of Appeals, which affirmed on May 1, 2012.  See United States v. Bonner, 469 F. App'x 119 (3d Cir. 2012) (nonprecedential).  Bonner then timely filed his first motion under 28 U.S.C. § 2255, claiming ineffective assistance of trial and appellate counsel.  We denied Bonner's motion, see United States v. Bonner, No. 1:09-CR-72, 2014 WL 5795601 (M.D. Pa. Nov. 6, 2014) (Conner, C.J.), and the court of appeals denied a certificate of appealability, see United States v. Bonner, No. 15-1770 (3d Cir. Jan. 5, 2016).

Bonner filed a second Section 2255 motion through appointed counsel in June 2016, invoking the Supreme Court's decision in Johnson v. United States, 576 U.S. 591 (2015).  Bonner's appointed counsel applied to the Third Circuit for authorization to proceed with a second or successive motion in this court and, at counsel's request, we stayed Bonner's motion while the court of appeals considered his application.  Proceedings here and in the court of appeals remained stayed while the Johnson progeny unfolded at the Supreme Court.  See Welch v. United

States, 578 U.S. ___, 136 S. Ct. 1257 (2016); Sessions v. Dimaya, 584 U.S. ___, 138 S. Ct. 1204 (2018); United States v. Davis, 588 U.S. ___, 139 S. Ct. 2319 (2019).

On August 15, 2019, following the Supreme Court's Davis decision, the court of appeals granted Bonner's application (along with the applications of approximately 200 other defendants) for leave to proceed with his second or successive Section 2255 motion in this court. In re Bonner, No. 16-2133 (3d Cir. Aug. 15, 2019) (citing In re Matthews, 934 F.3d 296 (3d Cir. 2019)). We promptly entered this judicial district's standing order appointing counsel to file any supplemental Section 2255 motion that may be warranted based on Davis. Appointed counsel filed a supplemental motion on March 13, 2020, and that motion is fully briefed and ripe for disposition. (See Docs. 642, 650, 654, 660).

## II.    **Legal Standard**

Under Section 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. 28 U.S.C. § 2255. Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States." Id. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a). The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).

III.  **Discussion**

Bonner seeks to vacate his multiple Section 924(c) convictions and the consecutive, mandatory minimum sentences required by statute based on the Supreme Court's decision in United States v. Davis, 588 U.S. ___, 139 S. Ct. 2319 (2019).  We address two threshold issues before turning to the merits of his motion.

A.  **Second or Successive Jurisdiction**

The instant motion is Bonner's second pursuant to 28 U.S.C. § 2255.  See United States v. Bonner, No. 1:09-CR-72, 2014 WL 5795601 (M.D. Pa. Nov. 6, 2014) (Conner, C.J.).  Bonner must thus secure prior authorization from the Third Circuit Court of Appeals to proceed with his motion, and thereafter demonstrate to this court that his motion is grounded in "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2); see also 28 U.S.C. § 2244(b)(3)(C).

The court of appeals conducted its preliminary examination in this case and concluded that Bonner had made the requisite *prima facie* showing that his motion satisfies these criteria.  See In re Bonner, No. 16-2133 (3d Cir. Aug. 15, 2019) (citing In re Matthews, 934 F.3d 296 (3d Cir. 2019)).  This authorization, however, evinces only that Bonner has made a sufficient showing of possible jurisdiction to warrant "fuller exploration by the district court."  See Goldblum v. Klem, 510 F.3d 204, 219 (3d Cir. 2007) (quoting Bennett v. United States, 119 F.3d 468, 469-70 (7th Cir. 1997)).  As our court of appeals has explained: "The District Court is not bound by our preliminary examination of the gatekeeping requirements, nor should it rest on our determination; it must conduct an independent inquiry."  See United States

v. Peppers, 899 F.3d 211, 221 (3d Cir. 2018) (citing Goldblum, 510 F.3d at 219-20). The court of appeals has described our gatekeeping function as requiring a "more extensive, more thorough, and . . . fuller" jurisdictional review before we may proceed to the merits of a second or successive Section 2255 motion.[3]  See id. (internal quotation marks omitted) (quoting Goldblum, 510 F.3d at 220).

There is no indication in the Davis decision itself that the Supreme Court intended it to be retroactive.  See Davis, 139 S. Ct. at 2354 (Kavanaugh, J., dissenting) ("And who knows whether the ruling will be retroactive?").  Several courts of appeals addressing this question have looked to Tyler v. Cain, 533 U.S. 656 (2001), where the Supreme Court noted that "[m]ultiple cases can render a new rule retroactive only if the holdings in those cases necessarily dictate retroactivity of the new rule."  Tyler, 533 U.S. at 666.  Applying this principle, three courts of appeals have concluded that Davis's retroactivity is "necessarily dictate[d]" by the Supreme Court's decision in Welch, which held that Johnson—the precursor to Davis—is

_____

[3] Bonner's briefing in this court was spare on the question of second-or-successive jurisdiction, so, in June 2020, we issued an order tasking Bonner to show cause why his motion should not be dismissed for lack of jurisdiction. (Doc. 657 at 3).  Bonner's show-cause response not only fails to engage with the circuit-specific case law identified by the court, it also intimates that our decision to raise that inquiry and test our jurisdiction in the first instance suggests some flaw in the system. (See Doc. 660 at 3 n.3 (asserting that "it makes sense to have a threshold legal issue, like retroactivity, resolved by the circuit" and that "[t]his case presents a valid reason for revisiting the requirement of overlapping determinations of the threshold retroactivity issue")).  A district court is required by the court of appeals to independently assure itself of jurisdiction over second-or-successive motions like Bonner's, and our show-cause order properly put counsel to the task of establishing the jurisdiction implicitly invoked but never substantiated.  See Peppers, 899 F.3d at 221 (citing Goldblum, 510 F.3d at 219-20).  Any objection counsel may have to the court of appeals' chosen approach to evaluating jurisdiction is more appropriately lodged with that court.

retroactively applicable on collateral review.  See <u>In re</u> <u>Franklin</u>, 950 F.3d 909, 910-11 (6th Cir. 2020) (quoting <u>Tyler</u>, 533 U.S. at 666); <u>In re</u> <u>Mullins</u>, 942 F.3d 975, 977-79 (10th Cir. 2019) (same); <u>In re</u> <u>Hammoud</u>, 931 F.3d 1032, 1038-39 (11th Cir. 2019) (same); <u>see also</u> <u>King v. United States</u>, 965 F.3d 60, 64 (1st Cir. 2020) (accepting government concession that <u>Davis</u> applies retroactively on collateral review and proceeding to merits of second-or-successive motion).

More recently, the Fifth Circuit offered a thorough and persuasive counterpoint to this emerging consensus in <u>In re</u> <u>Hall</u>, 979 F.3d 339 (5th Cir. 2020). The <u>Hall</u> court observed that, while "a reasonable jurist could easily read <u>Welch</u> and conclude that <u>Davis</u>'s retroactivity *logically follows*, . . . that is different from saying that <u>Welch</u> *necessarily dictates* that outcome."  <u>In re</u> <u>Hall</u>, 979 F.3d at 347.  In other words, the court said, "[a] reasonable jurist might well predict that the Supreme Court *would* make <u>Davis</u> retroactive if asked[,] [b]ut a successive habeas petition may proceed only if <u>Davis</u> *has been* 'made retroactive . . . by the Supreme Court.'" <u>Id.</u> (fourth alteration in original) (emphasis added).  According to the Fifth Circuit, it is not enough that "everyone merely agrees the Supreme Court *will* make it retroactive."  <u>Id.</u>  Ultimately, the court did not decide the question; it found that, even if <u>Davis</u> had been made fully retroactive by the Supreme Court, the movant's <u>Davis</u> claim was meritless.

Our court of appeals did not discuss retroactivity in its decision authorizing second-or-successive <u>Davis</u> petitions.  <u>See generally</u> <u>In re</u> <u>Matthews</u>, 934 F.3d 296. But it has narrowly interpreted the exception contemplated by <u>Tyler</u>, concluding that a "new rule is only made retroactive by the Supreme Court if that Court has

'explicitly held, or two or more of its decisions when read together . . . *absolutely dictate*, that a particular rule is retroactively applicable to cases on collateral review.'"  See Peppers, 899 F.3d at 229 (alteration in original) (emphasis added) (quoting *In re* Olopade, 403 F.3d 159, 162 (3d Cir. 2005)).  For example, in *In re* Turner, 267 F.3d 225 (3d Cir. 2001), the court declined to apply Tyler to conclude that Apprendi v. New Jersey, 530 U.S. 466 (2000), was fully retroactive on collateral review.  The court accepted *arguendo* movant's assertions that Apprendi was "a straightforward extension and application of" the Supreme Court's retroactive decision in *In re* Winship, 397 U.S. 358 (1970), and that the Court had made other extensions of Winship fully retroactive.  See *In re* Turner, 267 F.3d at 230-31.  Even with those assumptions, the court concluded that "the most that Turner can claim is that the Supreme Court *should* make Apprendi retroactive to cases on collateral review, and not that existing Supreme Court holdings dictate that result."  See id.

In light of this precedent, we are not convinced that the Third Circuit Court of Appeals would join the other circuits to hold that Welch "absolutely dictate[s]" that Davis is retroactive on collateral review.  Cf. Peppers, 899 F.3d at 229 (citing *In re* Olopade, 403 F.3d at 162).  Nonetheless, we may, like the Fifth Circuit, leave the issue for another day: even if we assume that Davis applies retroactively to Bonner's motion, we conclude that Bonner is not entitled to Section 2255 relief under Davis.

## B.    Procedural Default

When a defendant fails to raise a claim on direct appeal, he "procedurally defaults" that claim for purposes of collateral review.  See United States v. Bousley,

523 U.S. 614, 622 (1998).  A defendant may surmount this bar by showing cause

to excuse the default, as well as resulting prejudice should the default be given

preclusive effect.  See id. (collecting cases); United States v. Doe, 810 F.3d 132, 153

(3d Cir. 2015).  The government asserts that Bonner can demonstrate neither cause

nor prejudice.  (See Doc. 650 at 12-15).

Cause has been found to exist when a claim "is so novel that its legal basis is

not reasonably available to counsel" in earlier proceedings.  See Bousley, 523 U.S.

at 622 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)); see also Doe, 810 F.3d at 153

(quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)).  The Supreme Court has

identified three nonexhaustive circumstances in which this novelty exception may

apply to excuse counsel's failure to raise a legal theory at trial or on appeal: (1) the

Court overrules one of its precedents; (2) the Court overturns a "longstanding and

widespread [and] near-unanimous body of lower court authority"; or (3) the Court

rebukes a practice that its prior opinions "arguably" sanctioned.  Reed, 468 U.S. at

17 (citations omitted).

We previously determined that Section 2255 motions premised on the

Supreme Court's decision in Johnson implicated the novelty exception.  See, e.g.,

United States v. Nelson, No. 1:09-CR-211, 2017 WL 4648145, at *5-6 (M.D. Pa. Oct.

17, 2017) (Conner, C.J.); United States v. Mitchell, 218 F. Supp. 3d 360, 366-68 (M.D.

Pa. 2016) (Conner, C.J.).  We noted that, before Johnson, the Supreme Court had

repeatedly rejected entreaties from the late Justice Scalia to admit the residual

clause of the Armed Career Criminal Act "is a drafting failure and declare it void for

vagueness."  See Sykes v. United States, 564 U.S. 1, 28 (2011) (Scalia, J., dissenting);

see also <u>Mitchell</u>, 218 F. Supp. 3d at 367 & n.2 (citing <u>James v. United States</u>, 550 U.S. 192 (2007); <u>Begay v. United States</u>, 553 U.S. 137 (2008); <u>Chambers v. United States</u>, 555 U.S. 122 (2009)).  We held that these cases erected "a jurisprudential barricade to any successful challenge to the residual clause" and excused prior counsel's failure to raise such a challenge earlier.  <u>See</u> <u>Nelson</u>, 2017 WL 4648145, at *5 (citing <u>Mitchell</u>, 218 F. Supp. 3d at 366-68).

Bonner has not endeavored to make a similar showing as to <u>Davis</u>.  That is, his briefing does not identify a similar series of cases that would have rendered a vagueness challenge to Section 924(c)'s residual clause "unavailable" to him until now.  (<u>See</u> Doc. 654 at 1-3); <u>see also</u> <u>Bousley</u>, 523 U.S. at 622 (quoting <u>Reed</u>, 468 U.S. at 16).  Nonetheless, it is at least plausible that the same rationale that supported the novelty exception for <u>Johnson</u> motions would support its application to <u>Davis</u> motions.  Moreover, if Bonner were to prevail on the merits of his <u>Davis</u> claim, the illegality of his stacked 7-year and 25-year mandatory minimum sentences would constitute prejudice.  We will thus assume *arguendo* that Bonner has cleared the procedural default hurdle and analyze his claim on the merits.

### C.     Merits

Bonner challenges his three Section 924(c) convictions and the resulting

consecutive, mandatory minimum sentences.[4]  Section 924(c) establishes enhanced

punishments for any person who uses or carries a firearm "during and in relation

to," or who possesses a firearm "in furtherance of," a "crime of violence."  18 U.S.C.

§ 924(c)(1)(A).  The length of the mandatory minimum term of imprisonment—

which must be served consecutively to the sentence for the underlying crime of

violence—depends on whether the defendant uses, carries, or possesses the firearm

(five years); brandishes the firearm (seven years); or discharges the firearm (ten

years).  See id. § 924(c)(1)(A)(i)-(iii).  At the time Bonner was sentenced, the statute

required that a "second or subsequent" Section 924(c) conviction receive a 25-year

mandatory minimum sentence, even if the defendant's first conviction occurred

contemporaneously.  In other words, a first Section 924(c) conviction received the

mandatory minimum term described above, and all other Section 924(c) convictions

---

[4] Appointed counsel initially argued that Johnson also applies to invalidate
Bonner's designation as a career offender under Section 4B1.1 of the United States
Sentencing Guidelines.  (See Doc. 611 at 8-10, 17-24).  The Supreme Court has since
rejected this argument, holding that the Guidelines are not subject to vagueness
challenges under the Due Process Clause.  See Beckles v. United States, 580 U.S.
___, 137 S. Ct. 886, 895 (2017).  Bonner acknowledges that Beckles foreclosed any
vagueness challenge to his career-offender status.  (See Doc. 642 at 8 n.3).

received a consecutive mandatory minimum term of 25 years.  See 18 U.S.C.

§ 924(c)(1)(C)(i) (2011).[5]

A felony offense is a "crime of violence" if it "has as an element the use,

attempted use, or threatened use of physical force against the person or property

of another," id. § 924(c)(3)(A), or "by its nature, involves a substantial risk that

physical force against the person or property of another may be used in the course

of committing the offense," id. § 924(c)(3)(B).  Courts refer to Section 924(c)(3)(A) as

the "elements clause" or "force clause" and to Section 924(c)(3)(B) as the "residual

clause."  United States v. Robinson, 844 F.3d 137, 140-41 (3d Cir. 2016), cert. denied,

138 S. Ct. 215 (2017), abrogated on other grounds by Davis, 139 S. Ct. at 2327-33.  In

Davis, the Supreme Court invalidated the residual clause, holding that it was

unconstitutionally vague.  See Davis, 139 S. Ct. at 2336.

Bonner argues that, with the residual clause invalidated, his Section 924(c)

convictions cannot stand, because none of his convictions qualifies as a crime of

violence under the surviving elements clause.  The jury convicted Bonner on

three Section 924(c) charges, in Counts 7, 10, and 14.  (See Doc. 367 at 1, 2, 3).  The

indictment identified Hobbs Act robbery as the crime of violence underlying Count

7, and both Hobbs Act robbery and carjacking as the crimes of violence underlying

Counts 10 and 14.  (See Doc. 1 at 6, 7-8, 9-10).  The underlying Hobbs Act robbery

---

[5] The practice of contemporaneous stacking for first-time offenders was eliminated by the First Step Act of 2018, which amended Section 924(c) to apply the 25-year consecutive mandatory minimum term only to violations "that occur[] after a prior conviction under this subsection has become final."  See First Step Act of 2018, § 403(a), Pub. L. No. 115-391, 132 Stat. 5194, 5221-22.

counts in turn charged multiple theories, alleging that Bonner committed Hobbs Act robbery and also "attempted and conspired so to do . . . and did aid and abet." (Id. at 5-6, 6-7, 8-9). The underlying carjacking counts alleged that Bonner committed or attempted to commit carjacking "and did aid and abet." (See id. at 7, 9). The carjacking counts did not include a conspiracy allegation. (See id.)

According to Bonner, since multiple theories of liability were charged and submitted to the jury on the substantive Hobbs Act robbery and carjacking counts, there is no way to know the precise "crimes of violence" upon which the jury based its Section 924(c) verdicts, and we must therefore assume those convictions are premised on the least culpable offenses. (See Doc. 642 at 12-17 (citing Peppers, 899 F.3d at 233)). Bonner then posits that the least culpable offenses are either aiding and abetting, (see id. at 15), or conspiracy to commit Hobbs Act robbery, (see Doc. 654 at 4), and that neither qualifies as a Section 924(c) crime of violence.

We disagree with Bonner's assertion that we cannot identify the crimes of violence underlying the jury's Section 924(c) verdicts. As an initial matter, while the indictment did charge the substantive offense of conspiring to commit Hobbs Act robbery in Counts 6, 8, and 12, that theory was never submitted to the jury. We did not instruct the jury on conspiracy to commit Hobbs Act robbery, (see Doc. 349 at 78:11-104:23),[6] nor was conspiracy to commit Hobbs Act robbery put to the jury on

_____

[6] The court provided conspiracy instructions on Count 1, which charged a general conspiracy against the United States in violation of 18 U.S.C. § 371, but those instructions were explicitly limited to Count 1 and the overt acts alleged therein. (See Doc. 349 at 81:1-91:2).

the verdict form, (see Doc. 367 at 1, 2, 3).  We fail to see how the jury could have premised its Section 924(c) verdicts on predicate offenses that were not before it.

Bonner's argument that the Section 924(c) verdicts may have been premised on attempt offenses fares no better.  To be sure, the indictment charges multiple theories of liability for the Hobbs Act robbery and carjacking counts, and the jury was instructed on the various theories (attempt, and aiding and abetting) for those substantive counts.  (See Doc. 349 at 78:21-80:10, 102:21-104:23, 115:17-116:16).  Our instructions on the Section 924(c) counts were much narrower.  Specifically, we instructed the jury:

> In order to find Mr. Bonner guilty of these charged offenses[,] you must find that the government proved each of the following two elements beyond a reasonable doubt.  First, the government must prove that Chance Bonner *committed the crime of interference with interstate commerce by threats or violence* as charged in Counts 6, 8 and 12 of the indictment, respectively, or that Chance Bonner *committed a federal carjacking offense* as charged in Counts 9 and 13 respectively, and second, the government must prove that Chance Bonner knowingly possessed a firearm in furtherance of this crime.

(<u>Id.</u> at 100:24-101:12 (emphasis added)).[7]  These instructions contemplated only

a completed Hobbs Act robbery or carjacking offense as the predicate crime of

violence.  (<u>See</u> <u>id.</u>)  They do not suggest to the jury that attempt to commit Hobbs

Act robbery and carjacking (or conspiracy to do so, for that matter) could support a

Section 924(c) conviction.

The verdict form is similarly unambiguous on the criminal acts underlying

the Section 924(c) counts.  On the Hobbs Act robbery counts, the verdict form asked

whether the jury found beyond a reasonable doubt that Bonner either "did commit,

or attempt[ed] to commit, or aided and abetted" Hobbs Act robbery.  (Doc. 367 at 1,

2, 3).  For the carjacking counts, it asked whether the jury found beyond a

reasonable doubt that Bonner "took or attempted to take" a motor vehicle by force,

violence, or intimidation, "or aided and abetted another" in doing so.  (<u>Id.</u> at 2, 3).

As to the Section 924(c) counts, however, the inquiry was again much narrower,

asking the jury whether it found beyond a reasonable doubt that Bonner, as to

Count 7, "did possess, use, and carry a firearm in furtherance of *the commission of* a

---

[7] Bonner contends that the "as charged in" language incorporates into the Section 924(c) instructions all theories charged in the indictment, regardless of whether they were actually submitted to the jury.  (<u>See</u> Doc. 642 at 3, 13).  Those clauses, however, must be read in light of the unambiguous statements preceding them: that the government "must prove that Chance Bonner *committed* the crime of interference with interstate commerce by threats or violence" or that "Chance Bonner *committed* a federal carjacking offense."  (Doc. 349 at 101:2-8 (emphasis added)).  The "as charged in" clause simply linked the separate Section 924(c) counts to the corresponding crime-of-violence counts; it did not broaden the scope of the Section 924(c) instructions to the jury.  Read properly, and without counsel's selective omissions, (<u>see</u> Doc. 654 at 4), no reasonable juror could have fairly understood the court's instructions to permit conviction on a Section 924(c) offense based on attempt or conspiracy to commit a crime of violence.

Hobbs Act robbery," and, as to Counts 10 and 14, "did possess, use, and carry a firearm in furtherance of *the commission of* a Hobbs Act robbery and carjacking offense."  (See id. at 1, 2, 3 (emphasis added)).

It is clear from the court's instructions and from the verdict form that the crimes of violence underlying the Section 924(c) convictions are the completed offenses of Hobbs Act robbery and carjacking—based either on principal or accomplice liability—and not the separate, inchoate offenses of conspiracy or attempt.  To hold otherwise would require us to assume that the jurors failed to follow our explicit instructions.  Cf. Gov't of Virgin Islands v. Mills, 821 F.3d 448, 463 (3d Cir. 2016) ("[I]t is well established that jurors are presumed to follow their instructions." (citing Richardson v. Marsh, 481 U.S. 200, 206 (1987))).  We thus limit our discussion to the completed offenses of Hobbs Act robbery and carjacking.[8]

### 1.   *Hobbs Act Robbery*

The Hobbs Act defines "robbery" as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property."  18 U.S.C. § 1951(b)(1).  Bonner argues that, since "property" can include intangible property, "Hobbs Act robbery can be committed by threats to devalue some intangible economic interest like a stock holding or

---

[8] We note that whether attempted Hobbs Act robbery qualifies as a crime of violence for purposes of Section 924(c)'s elements clause is currently pending before the Third Circuit Court of Appeals.  See United States v. Walker, No. 15-4062 (3d Cir.).

contract right." (Doc. 642 at 25-26).  Accordingly, he reasons, it does not necessarily encompass the violent force required by Section 924(c)'s elements clause.  (Id.)

We considered (and rejected) this exact argument three weeks ago in United States v. Coles, No. 1:16-CR-212, 2021 WL 308831 (M.D. Pa. Jan. 29, 2021) (Conner, J.).  In Coles, we adopted the *ratio decidendi* of our court of appeals' recent nonprecedential decision in United States v. Monroe, No. 16-4384, ___ F. App'x ___, 2021 WL 50161 (3d Cir. Jan. 6, 2021) (nonprecedential).  The Monroe court rebuffed defendants' inventive hypotheticals—like those Bonner offers here—as nothing "more than the application of legal imagination," and noted that they had not identified a single case where Hobbs Act robbery has been prosecuted as hypothesized.  See Monroe, 2021 WL 50161, at *2 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)).  The court held that "applying the appropriate 'fear of injury' definition . . . to the correct definition of physical force, Hobbs Act

robbery is clearly a crime of violence." Id.  The Monroe decision accords with every

court of appeals to address this question to date.[9]

We reiterate our agreement with the rationale of Monroe and the

unanimous consensus of appellate courts.  Hobbs Act robbery is categorically a

crime of violence under Section 924(c)'s elements clause.  Accordingly, we will deny

Bonner's motion to the extent it is premised on Hobbs Act robbery as a potential

Section 924(c) predicate.

### 2.   *Carjacking*

An individual commits the federal crime of carjacking if they, "with the

intent to cause death or serious bodily harm[,] take[] a motor vehicle that has been

transported, shipped, or received in interstate or foreign commerce from the person

or presence of another by force and violence or by intimidation."  18 U.S.C. § 2119.

Bonner asserts that the least culpable version of this crime lacks as an element the

---

[9] See United States v. García-Ortiz, 904 F.3d 102, 105-09 (1st Cir. 2018), *cert.* denied, 139 S. Ct. 1208 (2019); United States v. Hill, 890 F.3d 51, 55-60 (2d Cir. 2018), *cert.* denied, 139 S. Ct. 844 (2019); United States v. Mathis, 932 F.3d 242, 265-66 (4th Cir. 2019), *cert.* denied, Stokes v. United States, 140 S. Ct. 640 (2019), and Uhuru v. United States, 140 S. Ct. 639 (2019); United States v. Buck, 847 F.3d 267, 274-75 (5th Cir. 2017); United States v. Gooch, 850 F.3d 285, 292 (6th Cir. 2017); United States v. Rivera, 847 F.3d 847, 848-49 (7th Cir. 2017); United States v. House, 825 F.3d 381, 387 (8th Cir. 2016); United States v. Dominguez, 954 F.3d 1251, 1260-61 (9th Cir. 2020), petition for *cert.* filed, No. 20-1000 (2021); United States v. Melgar-Cabrera, 892 F.3d 1053, 1060-66 (10th Cir. 2018); In re Saint Fleur, 824 F.3d 1337, 1340-41 (11th Cir. 2016); see also Robinson, 844 F.3d at 150-51 (Fuentes, J., concurring).  Interestingly, the First Circuit shot down the exact hypothetical offered by Bonner—that someone could commit Hobbs Act robbery "by threatening to 'devalue some intangible economic interest like a stock holding or contract right'"—stating it "sounds to us like Hobbs Act *extortion*."  Compare García-Ortiz, 904 F.3d at 107, with (Doc. 642 at 25-26); see also Hill, 890 F.3d at 57 n.9 (citing Duenas-Alvarez, 549 U.S. at 193); Dominguez, 954 F.3d at 1260-61 (same).

use, attempted use, or threatened use of physical force required under Section 924(c).  (Doc. 642 at 27-30).

Bonner again conjures up creative hypotheticals.  He contends that Section 2119 contemplates carjacking by *either* "force and violence" *or* "by intimidation," <u>see</u> 18 U.S.C. § 2119, and that an enhanced-penalty provision incorporates a definition of "serious bodily injury" that includes certain types of mental harm, <u>see</u> 18 U.S.C. § 2119(2) (incorporating "serious bodily injury" definition from 18 U.S.C. § 1365(3)(D)).  It follows, according to Bonner, that one could commit carjacking without force by "threats to inflict legal or reputational harm."  (<u>See</u> Doc. 642 at 29). Bonner suggests two examples: "pretending to be an armed uniformed police officer . . . when seizing a car from the victim," or by "towing a victim's car while claiming authority to do so and while possessing a firearm."  (<u>See</u> <u>id.</u>)

As a threshold matter, Bonner's argument concerning mental harm misreads the statute.  Section 2119 criminalizes carjacking "with intent to cause serious *bodily harm*."  <u>See</u> 18 U.S.C. § 2119 (emphasis added).  Section 2119(2) then establishes a sentencing enhancement for offenses in which "serious *bodily injury* . . . results," and incorporates another statute's definition of "serious bodily injury" for purposes of the enhanced-penalty provision.  <u>See</u> <u>id.</u> § 2119(2) (emphasis added) (incorporating 18 U.S.C. § 1365(h)(3)(D)).  The definition of "serious bodily injury" is not incorporated into the substantive offense, nor is there any indication that Congress intended "serious bodily harm" and "serious bodily injury" to be used interchangeably.  Bonner cites no authority for his implicit assertion that we may or

should look to an enhanced-penalty provision to define the elements of the offense itself. (<u>See</u> Doc. 642 at 29).

Moreover, as noted *supra*, the categorical approach "requires more than the application of legal imagination" to a statute's language. <u>See</u> <u>Duenas-Alvarez</u>, 549 U.S. at 194. That is, there must be "a realistic probability, not a theoretical possibility," that the statute would apply in the manner claimed by the defendant. <u>See</u> <u>id.</u> To establish the requisite "realistic probability," the defendant can "show that the statute was so applied in his own case" or point to other cases in which the statute has been applied as hypothesized. <u>See</u> <u>id.</u>

Bonner has made no such showing here.[10] He first cites <u>United States v. Green</u>, 664 F. App'x 193 (3d Cir. 2016) (nonprecedential), as proof of his hypotheticals being prosecuted. (<u>See</u> Doc. 642 at 30). True, the defendants in that case dressed as uniformed police officers, activated police lights, and displayed police badges in initially stopping the victims' vehicle. <u>See</u> <u>Green</u>, 664 F. App'x at 195. But that is where <u>Green</u>'s parallels to Bonner's hypothetical end. When one victim refused to exit the vehicle, the defendant "opened the door and threw [him] out of the vehicle and onto the ground," before handcuffing him and placing him in the rear of the vehicle. <u>See</u> <u>id.</u> When the same victim declared that the defendant

---

[10] Bonner does not argue that his own case illustrates a carjacking without the use, threatened use, or attempted use of violent physical force, nor could he. (<u>See</u> Doc. 642 at 29-30). As detailed at length in our opinion denying Bonner's first Section 2255 motion, Bonner and his codefendants committed armed carjackings in the course of committing armed robberies which involved both the threatened and actual use of violent physical force against numerous victims. <u>See generally</u> <u>Bonner</u>, 2014 WL 5795601, at *1-3, *7-8, *10; <u>see also</u> <u>Bonner</u>, 469 F. App'x at 131-32.

and his accomplice were "not real cops," the defendant pointed a gun at him and repeatedly threatened to kill him if he did not "shut up," then "hit [him] on the head, shoulder, and legs with the handgun," before hitting a second victim with the weapon and repeatedly striking a third victim in the eye with it. See id. This is hardly an example of a nonviolent carjacking accomplished by "threats to inflict legal or reputational harm." (See Doc. 642 at 29).

Bonner also invokes the Supreme Court's decision in Holloway v. United States, 526 U.S. 1 (1999), as support for the proposition that a defendant could be convicted for carjacking by intimidation without ever using, attempting to use, or threatening to use physical force. (See Doc. 642 at 30). Bonner relies on the Court's remark that "an empty threat, or intimidating bluff," would satisfy the intimidation element. See Holloway, 526 U.S. at 11. The Holloway decision was concerned with the intent element of carjacking; not the intimidation element and not the offense's status as a crime of violence. See id. at 3, 6-11. In any event, the elements clause is clear that even "*threatened* use of physical force" qualifies an offense as a crime of violence, see 18 U.S.C. § 924(c)(3)(A) (emphasis added), and Bonner fails to support his intimation that a defendant must both intend to threaten force *and* intend to follow through on his threat for an offense to meet the elements clause. Finally, like Green, the facts of Holloway do precious little to support Bonner's theory of a carjacking *sans* violent force: in all three carjackings in that case, the defendant "approached the driver, produced a gun, and threatened to shoot unless the driver handed over the car keys," and, when one victim hesitated, the defendant "punched him in the face." See Holloway, 526 U.S. at 3-4.

Every court of appeals to address the question to date has held that carjacking categorically qualifies as a crime of violence under the elements clause.[11] These courts confronted and rejected the same sweeping reading of "intimidation" now advanced by Bonner.  See, e.g., Evans, 848 F.3d at 247 ("We are not aware of any case in which a court has interpreted the term 'intimidation' in the carjacking statute as meaning anything other than a threat of violent force."); Jackson, 918 F.3d at 486 ("[T]he commission of carjacking by 'intimidation' necessarily involves the threatened use of violent physical force."); Gutierrez, 876 F.3d at 1257 ("It is particularly clear that 'intimidation' in the federal carjacking statute requires a contemporaneous threat to use force . . . .").  Many of these decisions relied on earlier intracircuit precedent holding that bank robbery under 18 U.S.C. § 2113, the relevant elements of which are identical to Section 2119, is a crime of violence under the elements clause.  See, e.g., Cruz-Rivera, 904 F.3d at 66; Evans, 848 F.3d at 246-47; Jones, 854 F.3d at 740; Jackson, 918 F.3d at 486; Estell, 924 F.3d at 1293; Gutierrez, 876 F.3d at 1257.

Our court of appeals has not yet decided whether carjacking is categorically a crime of violence for purposes of Section 924(c)'s elements clause.  That question is

---

[11] See United States v. Cruz-Rivera, 904 F.3d 63, 66 (1st Cir. 2018), cert. denied, 139 S. Ct. 1391 (2019); United States v. Evans, 848 F.3d 242, 247-48 (4th Cir. 2017); United States v. Jones, 854 F.3d 737, 740 (5th Cir. 2017), abrogated on other grounds by, Davis, 139 S. Ct. at 2336; United States v. Jackson, 918 F.3d 467, 486 (6th Cir. 2019); Estell v. United States, 924 F.3d 1291, 1293 (8th Cir.), cert. denied, 140 S. Ct. 490 (2019); United States v. Gutierrez, 876 F.3d 1254, 1256-57 (9th Cir. 2017) (per curiam); In re Smith, 829 F.3d 1276, 1280-81 (11th Cir. 2016).

currently pending before it.  See United States v. Smith, No. 19-2257 (3d Cir.).[12]  The court has, however, held that bank robbery—which, like carjacking, is committed "by force and violence, or by intimidation," see 18 U.S.C. § 2113(a)—is categorically a crime of violence under the elements clause.  See United States v. Johnson, 899 F.3d 191, 202-04 (3d Cir. 2018) (citing United States v. Wilson, 880 F.3d 80, 84-85 (3d Cir. 2018)).  And just last year, three judges of the court of appeals signaled their agreement with our sister circuits, albeit in an unpublished order, that this holding as to bank robbery is dispositive as to carjacking.  In United States v. Lowe, No. 20-1311, 2020 WL 4582606 (3d Cir. July 27, 2020) (nonprecedential), the court denied a certificate of appealability on this very issue, holding that "jurists of reason could not debate the District Court's conclusion that carjacking in violation of 18 U.S.C. § 2119 categorically constitutes a crime of violence under the elements clause of 18 U.S.C. § 924(c)(3)(A)."  Lowe, 2020 WL 4582606, at *1 (citing, inter alia, Johnson, 899 F.3d at 203-04; Wilson, 880 F.3d at 84-85).  The court found that the same arguments raised by Bonner here—regarding Holloway and the term "serious bodily injury" in Section 2119(2)—do "not make that point reasonably debatable."  See id. at *1; see

---

[12] In United States v. Smith, 379 F. Supp. 3d 355 (M.D. Pa. 2019) (Conner, C.J.), we held, based on our court of appeals' decision in Robinson, that carjacking committed while brandishing a firearm is a crime of violence under Section 924(c). Smith, 379 F. Supp. 3d at 360 (citing Robinson, 844 F.3d at 143). Robinson rejected the categorical approach for cases in which the predicate offense and the Section 924(c) offense "are contemporaneous and tried to the same jury," since in that situation, "all necessary facts are before the district court." Robinson, 844 F.3d at 141. Robinson has since been abrogated by the Supreme Court's decision in Davis, which reaffirmed that the categorical approach applies to determine an offense's status vel non as a crime of violence under Section 924(c). See Davis, 139 S. Ct. at 2327-33; (see also Doc. 644 at 12-13; Doc. 652 at 16 n.6).

also Application for Certificate of Appealability at 5-9, United States v. Lowe, No. 20-1311 (3d Cir. Mar. 5, 2020).

We are persuaded by the reasoning adopted by the unanimous consensus of our sister circuits, particularly since it is in accord with relevant Third Circuit precedent. We conclude that the "intimidation" element of Section 2119 necessarily means the same thing it does in Section 2113—the threatened use of physical force against the person of another. Cf. Wilson, 880 F.3d at 84-85; see also Lowe, 2020 WL 4582606, at *1. Accordingly, carjacking has as an element the "use, attempted use, or threatened use of physical force," see 18 U.S.C. § 924(c)(3)(A), and is categorically a crime of violence for purposes of Section 924(c).

### 3.    *Aiding and Abetting*

Bonner next argues that aiding and abetting a crime of violence is not itself a crime of violence, so his Section 924(c) convictions must be vacated to the extent they are premised on accomplice liability. (Doc. 642 at 16-18). We have considered and rejected this argument in several recent opinions, and we do so again here. See Coles, 2021 WL 308831, at *10; United States v. Green, 467 F. Supp. 3d 252, 256-57 & nn.2-3 (M.D. Pa. 2020) (Conner, J.), appeal filed, No. 20-2459 (3d Cir.); United States v. Green, No. 1:11-CR-361, ___ F. Supp. 3d ___, 2020 WL 5939161, at *4 & nn.3-4 (M.D. Pa. Oct. 7, 2020) (Conner, J.), appeal filed, No. 20-3262 (3d Cir.). As we explained in Coles and Green, our court of appeals has held in a nonprecedential decision that it "does not matter" whether a defendant is convicted as a principal or an aider and abettor since aiding and abetting "is not a separate crime." United

States v. McKelvey, 773 F. App'x 74, 75 (3d Cir. 2019) (nonprecedential).[13]  Other

courts of appeals to address the question unanimously agree that a defendant who

aids and abets a crime of violence has himself committed a crime of violence for

purposes of Section 924(c).[14]

Accordingly, whether Bonner was convicted as a principal or as an aider

and abettor is of no moment: either way, he is treated as having committed the

substantive crimes of Hobbs Act robbery and carjacking.  See McKelvey, 773 F.

App'x at 75; see also Rosemond v. United States, 572 U.S. 65, 70 (2014) (aiding-and-

abetting statute "reflects a centuries-old view of culpability: that a person may be

responsible for a crime he has not personally carried out if he helps another to

complete its commission" (citation omitted)).  Assuming *arguendo* that the jury

convicted Bonner of Hobbs Act robbery and carjacking on an aiding-and-abetting

---

[13] In McKelvey, the court concluded that aiding and abetting Hobbs Act robbery qualifies as a crime of violence under Section 924(c)'s elements clause, relying on the court's decision in Robinson.  See McKelvey, 773 F. App'x at 75 (applying Robinson, 844 F.3d 137).  The Supreme Court's Davis decision abrogated Robinson (and thus McKelvey, to the extent it applied Robinson's case-specific, noncategorical approach), but it did not disturb McKelvey's separate reasoning on the nature of aiding-and-abetting liability.  See Coles, 2021 WL 308831, at *10 n.8 (citing Green, 467 F. Supp. 3d at 256 n.2; Green, 2020 WL 5939161, at *4 n.3).  As previously, we find McKelvey's reasoning to be persuasive.  See id.

[14] See García-Ortiz, 904 F.3d at 109; United States v. Brayboy, 789 F. App'x 384, 385 (4th Cir. 2020) (nonprecedential); United States v. Richardson, 948 F.3d 733, 741-42 (6th Cir. 2020); United States v. Grissom, 760 F. App'x 448, 454 (7th Cir. 2019) (nonprecedential); Johnson v. United States, 774 F. App'x 334, 334-35 (8th Cir. 2019) (nonprecedential); United States v. Deiter, 890 F.3d 1203, 1214-16 (10th Cir. 2018); *In re* Colon, 826 F.3d 1301, 1305 (11th Cir. 2016).

theory, those convictions independently qualify as crimes of violence for purposes of Section 924(c).[15]

### 4.    *Conspiracy Against the United States*

Bonner lastly argues that, because the jury's general verdict does not allow the court to determine on which overt act the jury premised its Section 371 conspiracy conviction, this conviction must be vacated.  (See Doc. 642 at 30). Bonner's argument is contingent upon the court finding that his Section 924(c) convictions are invalid post-Davis.  (See id.)  Having rejected Bonner's arguments with respect to the Section 924(c) counts and having held that those convictions remain valid, we likewise reject his derivative argument regarding the conspiracy conviction.

---

[15] The only authority identified by Bonner (other than the dissent in *In re* Colon, 826 F.3d at 1306 (Martin, J., dissenting)) is the Ninth Circuit's decision in United States v. Innie, 7 F.3d 840 (9th Cir. 1993).  That decision is inapposite.  The court in Innie held that a conviction under the accessory-after-the-fact statute, 18 U.S.C. § 3, does not qualify as a crime of violence under the elements clause of 18 U.S.C. § 16, which supplies the definition of "crime of violence" for many federal statutes.  See Innie, 7 F.3d at 850.  But an accessory after the fact is materially different from an aider and abettor.  An aider and abettor facilitates the principal's commission of the underlying offense and is "punishable as a principal."  See 18 U.S.C. § 2(a); see also United States v. Nolan, 718 F.2d 589, 592 (3d Cir. 1983) (quoting Nye & Nissen v. United States, 336 U.S. 613, 619 (1949)).  An accessory after the fact becomes involved *after* the offense has been committed and is generally subject to "one-half" the maximum punishment applicable to the principal.  See 18 U.S.C. § 3.

**IV.**    <u>**Conclusion**</u>

For all of the reasons set forth herein, we will deny Bonner's motion to vacate and correct sentence pursuant to 28 U.S.C. § 2255.  We will also deny a certificate of appealability, because Bonner has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  An appropriate order shall issue.

<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    February 22, 2021